J-S67015-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RONALD LEE POE | : | |
| | : | |
| Appellant | : | No. 1200 MDA 2019 |

Appeal from the Judgment of Sentence Entered June 18, 2019
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0003989-2018

BEFORE:   OLSON, J., DUBOW, J., and STEVENS, P.J.E.*

MEMORANDUM BY OLSON, J.:                **FILED JANUARY 07, 2020**

Appellant, Ronald Lee Poe, appeals from the judgment of sentence entered on June 18, 2019, following his jury trial conviction for persons not to possess a firearm.[1]  We affirm.

The trial court summarized the facts of this case as follows:

[O]n June 24, 2018, at approximately 4:00 p.m., [Trooper Timothy Richartz ("Richartz") of the Pennsylvania State Police ("PSP")] and other troopers arrived at [a residence on] Tanning Yard Hollow Road in Drumore Township for service of a warrant on Lisa McCall ("McCall").  When Appellant came out of the house, Richartz asked if McCall was at the residence.  Initially, Appellant stated he just woke up and did not know where she was.  When Richartz informed Appellant that PSP received a tip that McCall was at his residence, Appellant invited Richartz into the house where McCall was located.  Once McCall was in custody, [the PSP] left the residence.

---

* Former Justice specially assigned to the Superior Court.

[1]  18 Pa.C.S.A. § 6105.

During a subsequent interview, McCall told Richartz she arrived at Appellant's residence at 4:30 p.m. When Richartz noted that was not possible because [the PSP] arrived at 4:00 p.m., McCall stated she arrived at 3:30 p.m. McCall told Richartz that she bought three bags of heroin from Appellant for $30[.00], and he gave her some methamphetamine for free. McCall said they used some of the narcotics in Appellant's room. McCall further stated the heroin was in three white bags with a money symbol on them, and she threw the empty bags in the trash can in Appellant's room.

Based on information provided by McCall, Richartz obtained a search warrant for the residence. According to the search warrant, McCall told Richartz that while they were in Appellant's bedroom she saw heroin in raw form which Appellant placed into three bags for her. McCall also saw methamphetamine the size of a golf ball from which Appellant removed a small piece and gave it to her. McCall further stated that Appellant ke[pt] his narcotics in a black bag in his bedroom next to the dresser, she [] observed him hide narcotics in vehicles on his property to avoid police detection, she believed he cook[ed] methamphetamine in his basement, and she was told he may have a firearm. During a subsequent search of the residence, Richartz located a black bag containing heroin, methamphetamine and drug paraphernalia just outside Appellant's room in a stack of brown boxes. A .32 caliber gun was located in a green bag inside Appellant's bedroom behind the door. At the completion of the search, Appellant was taken into custody and transported to the Troop J Barracks.

At the police station, Richartz used a written form to read Appellant his **Miranda**[2] rights, and he gave Appellant a copy to follow along. After reading Appellant his **Miranda** rights Richartz asked, "[d]o you understand your rights I've explained to you?" Appellant responded, "yes." Richartz then asked whether Appellant wished to make a statement. Appellant responded by shaking his head no and stating, "no, I haven't thought about it." Richartz then clarified by asking, "do you want to answer some questions? If you don't want to, that's fine." Richartz testified that he interpreted Appellant's response as him shrugging yes. Richartz further testified that at no time did Appellant mention the word lawyer.

_____

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

Thereafter, Appellant wrote his initials beside each "yes" mark that Richartz had checked on the *Miranda* rights form, acknowledging he understood his rights and he wanted to give a statement. Richartz testified that at no time during the interview did Appellant say he wanted to stop the interview or get a lawyer. Richartz noted that because Appellant appeared to answer all of his questions willingly, he never thought Appellant did not want to speak with him.

While they were together, Richartz did not threaten Appellant, engage in a show of force, or yell at him. Appellant was not handcuffed during the interview. Richartz believed Appellant's behavior was normal during the interview based on their prior interactions. Appellant was alert, coherent, did not appear intoxicated, understood what was happening, and his decision to talk with Richartz appeared to be made freely and voluntarily. If Richartz believed that Appellant did not understand what was happening, Richartz would have discontinued the interview.

Trial Court Opinion, 8/28/2019, at 3-5 (footnote incorporated).

The Commonwealth charged Appellant with the aforementioned offense, as well as possession with intent to deliver narcotics (PWID), conspiracy to commit PWID, possession of a small amount of marijuana, and possession of drug paraphernalia.[3] Prior to trial, Appellant filed motions to suppress the physical evidence recovered after executing the search warrant, as well as his subsequent statement to police. Appellant claimed there were material omissions contained in the affidavit of probable cause and that he invoked his rights to remain silent and to be represented by an attorney pursuant to *Miranda*. The trial court held a suppression hearing on November 8, 2018, following which it denied Appellant relief. On April 10, 2019, a jury trial found Appellant guilty of persons not to possess a firearm offense. Prior to

---

[3] 35 P.S. § 780-113(a)(30), 18 Pa.C.S.A. § 903, 35 P.S. § 780-113(a)(31), and 35 P.S. § 780-113(a)(32).

sentencing, the Commonwealth *nol prossed* the remaining crimes. On June 18, 2019, the trial court sentenced Appellant to five to ten years of incarceration. This timely appeal resulted.[4]

On appeal, Appellant presents the following issues for our review:

1. Whether the [t]rial [c]ourt erred in not granting the suppression of the search warrant for [the residence] on Tanning Hollow Road on June 24, 2018, as the affidavit of probable cause contained material omissions/misstatements of fact relied upon by the magisterial district judge in making a finding of probable cause and approving the warrant. Specifically, Lisa McCall did not know when she arrived at [the subject residence] on June 24, 2018, and Lisa McCall was under the influence of methamphetamines and heroin when she spoke to the Pennsylvania State Police Trooper on June 24, 2018. This information was omitted by the affiant of the search warrant.

2. Whether the [t]rial [c]ourt erred in not suppressing [Appellant's] custodial statement given to the police on June 25, 2018, as [Appellant's] *Miranda* waiver was not intelligent, knowing and voluntary. Specifically, [Appellant] shook his head in the negative when the police asked him whether he wished to answer questions. Moreover, [Appellant] told the police after *Miranda* warnings were given and he was asked whether he wished to answer questions, he responded "no, I haven't thought about it" and references the word lawyer. In response to these verbal and body responses, Trooper Richartz did not engage in clarification questions but immediately proceeded with the custodial interrogation. This was done in violation of Article I, Section 9 of the Pennsylvania Constitution and the Fifth Amendment to the U.S. Constitution.

Appellant's Brief at 4.

_____

[4] Appellant filed a notice of appeal on July 18, 2019 and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on August 5, 2019. The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) on August 28, 2019.

This Court's well-settled standard of review of a denial of a motion to suppress evidence is as follows:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526–527 (Pa. Super. 2015) (internal citation, original brackets, and ellipsis omitted).

We have carefully reviewed the certified record, the submissions of the parties, and the thorough opinion issued by the trial court on August 28, 2019. Based upon our review, we are satisfied that the affidavit of probable cause did not contain material omissions to invalidate the search warrant at issue. Here, the trial court determined that a minor discrepancy regarding McCall's arrival time at the subject residence was not a material fact. Additionally, the trial court determined that McCall did not appear intoxicated when making statements to police, but even if she had been, it was not material to whether there were illegal items located inside Appellant's residence. Moreover, the

affidavit of probable cause, introduced into evidence at the suppression hearing, specifically states that McCall and Appellant used drugs together prior to McCall's interview with police. Thus, the trial court determined that the police properly apprised the issuing authority of all of the material facts of this case before authorization of the search warrant. We discern no error.

Regarding Appellant's subsequent statements to police, the trial court noted that while Appellant was not prepared to make a full statement to police, he was willing to answer their questions. Furthermore, police verbally explained Appellant's *Miranda* rights to him and provided him with a copy of written *Miranda* rights prior to interviewing him. Appellant reviewed the written copy and signed the document, thereby waiving his *Miranda* rights, before answering police questions. Moreover, the trial court credited Trooper Richartz testimony that despite receiving *Miranda* warnings, Appellant never invoked his right to an attorney. Finally, we note that upon review of the certified record, the trial court viewed a video and audio recording of the entire interaction between the police and Appellant before ultimately denying suppression. Based upon all of the foregoing, the trial court determined that Appellant knowingly and intelligently waived his right to remain silent and his right to counsel prior to giving his statement to police. Again, we discern no error.

Because the trial court's opinion adequately and accurately addresses the claims Appellant presents on appeal, we adopt the trial court's August 28,

2019 opinion as our own. The parties are hereafter directed to include a copy of the trial court's August 28, 2019 opinion with all future filings pertaining to our disposition of this appeal.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/07/2020

# IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
## CRIMINAL

COMMONWEALTH OF PENNSYLVANIA      :

       vs.

RONALD LEE POE

:      1200 MDA 2019

:

:      CP-36-CR-0003989-2018

:

## PA R.A.P. 1925 OPINION

BY TOTARO, J.

Presently before the Superior Court of Pennsylvania is an appeal filed by Ronald Lee Poe ("Appellant") from the judgment of sentence imposed on June 18, 2019. For the reasons stated herein, the appeal should be denied.

On June 24, 2018, Trooper Timothy Richartz ("Richartz") of the Pennsylvania State Police ("PSP") executed a search warrant at Appellant's residence located at 1237 Tanning Yard Hollow Road, Drumore Township, Lancaster County, Pennsylvania. (Notes of Testimony, Suppression Hearing at 5-6) ("N.T.S.H."). Based on evidence found in the residence, Appellant was charged with person not to possess a firearm, possession with intent to deliver heroin and methamphetamine, conspiracy to possess with intent to deliver a controlled substance, possession of a small amount of marijuana, and possession of drug paraphernalia. *See* Criminal Information.[1]

On October 19, 2018, Appellant filed a motion to suppress evidence obtained pursuant to the search warrant by claiming the affidavit of probable cause contained material omissions. *See* Omnibus Pretrial Motion. Appellant also sought to suppress the statement he gave to police by

---

[1] 18 Pa.C.S.A. 6105; 35 P.S. § 780-113(a)(30); 18 Pa.C.S.A. § 903; 35 P.S. § 780-113(a)(31); and 35 P.S. § 780-113(a)(32) respectively.

alleging he invoked his *Miranda* right to remain silent. *Id.* In an amended motion filed on November 8, 2018, Appellant further claimed his statement to police should be suppressed because he invoked his right to an attorney. *See* Amended Omnibus Pretrial Motion.

Following a suppression hearing held on November 8, 2018, the court entered an order denying the suppression motions. *See* Order, 2/8/19. Thereafter, on April 10, 2019, the parties proceeded to a jury trial on the charge of person not to possess a firearm, at which time Appellant was found guilty. (Notes of Testimony, Trial at 177) ("N.T."). On June 18, 2019, the court imposed a standard range guideline sentence of five to ten years incarceration. (Notes of Testimony, Sentencing at 7, 23) ("N.T.S.").[2]

On July 18, 2019, Appellant filed a Notice of Appeal to the Superior Court. On August 5, 2019, Appellant filed a Statement of Errors Complained of on Appeal ("Statement") alleging the trial court erred in: (1) not suppressing the fruits of the search warrant because the affidavit of probable cause contained material omissions or misstatements of material fact; and (2) not suppressing Appellant's statement to police because his *Miranda* waiver was not intelligent, knowing and voluntary. *See* Statement. This opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

## DISCUSSION

When a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. *Commonwealth v. Bowmaster*, 101 A.3d 789, 792 (Pa. Super. 2014). When the Commonwealth prevails on a motion to suppress evidence before the trial court, an appellate court may consider

---

[2] Prior to sentencing, the Commonwealth nol-prossed the remaining counts. (N.T.S. at 2).

2

only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. *Commonwealth v. Edwards*, 194 A.3d 625, 631 (Pa. Super. 2018).

"It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Dutrieville*, 932 A.2d 240, 242 (Pa. Super. 2007) (quoting *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa. Super. 2003)). Furthermore, where the record supports the factual findings of the trial court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. *Commonwealth v. Wilmer*, 194 A.3d 564, 567 (Pa. 2018).

In the present case, Trooper Richartz testified at the suppression hearing that on June 24, 2018, at approximately 4:00 p.m., he and other troopers arrived at 1237 Tanning Yard Hollow Road in Drumore Township for service of a warrant on Lisa McCall ("McCall"). (N.T.S.H. at 9-11). When Appellant came out of the house, Richartz asked him if McCall was at the residence. *Id.* at 12. Initially, Appellant stated he just woke up and did not know where she was. *Id.* When Richartz informed Appellant that PSP received a tip McCall was at his residence, Appellant invited Richartz into the house where McCall was located. *Id.* at 12-13. Once McCall was in custody, troopers left the residence. *Id.* at 13.

During a subsequent interview, McCall told Richartz she arrived at Appellant's residence at 4:30 p.m. (N.T.S.H. at 16). When Richartz noted that was not possible because troopers arrived at 4:00 p.m., McCall stated she arrived at 3:30 p.m. *Id.* McCall told Richartz that she bought three bags of heroin from Appellant for $30, and he gave her some methamphetamine for free. *Id.* at 14. McCall said they then used some of the narcotics in Appellant's room. *Id.*

3

McCall further stated the heroin was in three white bags with a money symbol on them, and she threw the empty bags into the trash can in Appellant's room. *Id.* at 18.

Based on information provided by McCall, Richartz obtained a search warrant for the residence. (N.T.S.H. at 18); Com. S.H. Exh. 1.[3] During a subsequent search of the residence, Richartz located a black bag containing heroin, methamphetamine and drug paraphernalia just outside Appellant's room in a stack of brown boxes. (N.T.S.H. at 21). A .32 caliber gun was located in a green bag inside Appellant's bedroom behind the door. *Id.* At the completion of the search, Appellant was taken into custody and transported to the Troop J Barracks. *Id.* at 21-22.

At the police station, Richartz used a written form to read Appellant his *Miranda* rights, and he gave Appellant a copy to follow along. (N.T.S.H. at 25-27); Com. S.H. Exh. 2. After reading Appellant his *Miranda* rights Richartz asked, "[d]o you understand your rights I've explained to you?" (N.T.S.H. at 26). Appellant responded, "yes." *Id.* Richartz then asked whether Appellant wished to make a statement. *Id.* Appellant responded by shaking his head no and stating, "no, I haven't thought about it." *Id.* Richartz then clarified by asking "do you want to answer some questions? If you don't want to, that's fine." *Id.* at 34. Richartz testified that he interpreted Appellant's response as him shrugging yes. *Id.* at 26. Richartz further testified that at no time did Appellant mention the word lawyer. *Id.* at 34.

---

[3] According to the search warrant, McCall told Richartz that while they were in Appellant's bedroom she saw heroin in raw form which Appellant placed into three bags for her. *See* Affidavit of Probable Cause, at ¶ 2. McCall also saw methamphetamine the size of a golf ball from which Appellant removed a small piece and gave to her. *Id.* McCall further stated that Appellant keeps his narcotics in a black bag in his bedroom next to the dresser, she has observed Appellant hide narcotics in vehicles on his property to avoid police detection, she believed he cooks methamphetamine in his basement, and she was told he may have a firearm. *Id.* at ¶¶ 3-4. The affidavit also states that Appellant has three prior felony drug convictions. *Id.* at ¶ 5.

4

Thereafter, Appellant wrote his initials beside each "yes" mark that Richartz had checked on the *Miranda* rights form, acknowledging he understood his rights and he wanted to give a statement. (N.T.S.H. at 26-27); Com. S.H. Exh. 2. Richartz testified that at no time during the interview did Appellant say he wanted to stop the interview or get a lawyer. (N.T.S.H. at 31). Richartz noted that because Appellant appeared to answer all of his questions willingly, he never thought Appellant did not want to speak with him. *Id.*

While they were together, Richartz did not threaten Appellant, engage in a show of force, or yell at him. (N.T.S.H. at 24). Appellant was not handcuffed during the interview. *Id.* at 38. Richartz believed Appellant's demeanor was normal during the interview based on their prior interactions. *Id.* at 23-24. Appellant was alert, coherent, did not appear intoxicated, understood what was happening, and his decision to talk with Richartz appeared to be made freely and voluntarily. *Id.* at 24-25. If Richartz believed that Appellant did not understand what was happening, Richartz would have discontinued the interview. *Id.* at 25.

In his first issue, Appellant alleges the affidavit of probable cause for the search warrant contained material omissions or misstatements of the facts which were relied upon by the magisterial district judge in making a finding of probable cause and approving the warrant. *See* Statement. Specifically, Appellant avers the affiant of the search warrant omitted the fact that McCall did not know when she arrived at Appellant's residence on the day in question. *Id.* Appellant further claims the affidavit of probable cause failed to explain that McCall was under the influence of drugs at the time of her police interview. *Id.*

"Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a

5

man of reasonable caution in the belief that a search should be conducted." *Commonwealth v. Leed,* 186 A.3d 405, 413 (Pa. 2018) (quoting *Commonwealth v. Johnson,* 42 A.3d 1017, 1031 (Pa. 2012)). In deciding whether there is sufficient probable cause, the issuing authority must apply the totality of the circumstances test, "which requires her to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit[,] including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Johnson,* 42 A. 3d at 1031 (internal quotation marks omitted).

In reviewing a search warrant, the reviewing court need only determine whether "a substantial basis existed for the [issuing authority] to find probable cause." *Johnson,* 42 A.3d at 1031. Moreover, "[i]n analyzing whether a warrant was supported by probable cause, judicial review is confined to the four corners of the affidavit." *Commonwealth v. Coleman,* 830 A.2d 554, 560 (Pa. 2003). The standard for addressing an alleged omission of material facts is as follows:

> Where a defendant alleges that material facts were omitted from an affidavit, we consider (1) whether the officer withheld a highly relevant fact within his knowledge, where any reasonable person would have known that this was the kind of thing the judge would wish to know and (2) whether the affidavit would have provided probable cause if it had contained a disclosure of the omitted information. This type of challenge typically applies where the omission of facts tended to mislead the magistrate as to the veracity of the facts included. The pertinent analysis is whether inclusion of the omitted material facts would have undermined the other facts in the affidavit that gave rise to probable cause.

*Commonwealth v. Gould,* 187 A.3d 927, 940 (Pa. Super. 2018) (internal citations and quotations omitted). Courts have held that, even where an officer's statements in an affidavit were "misleading by omission," and where the omission was deliberate, invalidation of the warrant

6

was not necessary because the omission was "not an attempt to create probable cause where none existed" and because the affidavit still would have presented probable cause if the full information had been included. *Commonwealth v. Taylor*, 850 A.2d 684, 689 (Pa. Super. 2004) (quoting *Commonwealth v. Yerger*, 482 A.2d 984, 990-91 (Pa. Super. 1984)).

In response to Appellant's claim that McCall's confusion as to when she arrived at the residence was a material omission, Richartz testified that in his experience people sometimes tend to "be off" when trying to remember the timing of incidents. (N.TS.H. at 16). He did not include McCall's confusion in the affidavit because she corrected her arrival time after being told she could not have arrived at 4:30 p.m. *Id.* As such, this omission does not appear to be an attempt by Richartz to create probable cause where none existed. Moreover, the discrepancy in arrival time of one hour does not appear to be a material fact.

As to Appellant's claim that the affidavit of probable cause failed to explain McCall was under the influence of drugs at the time of her police interview, there is no evidence to suggest McCall was under the influence of drugs at the time of the interview. Rather, Richartz testified that McCall was alert, coherent, and did not appear to be intoxicated during the interview. (N.TS.H. at 14-15). Richartz knows what signs to look for in someone who is intoxicated, and he would have stopped the interview if he believed McCall was intoxicated. *Id.* Furthermore, the affidavit specifically stated that McCall and Appellant "shot up some of the heroin/meth together" after Appellant sold the drugs to McCall. *See* Affidavit of Probable Cause at ¶ 2. Thus, the issuing authority was informed that McCall had used drugs prior to her interview.

Assuming, *arguendo*, this information should have been included in the affidavit, invalidation of the warrant is not appropriate because the affidavit still would have presented

7

probable cause if the full information had been included. According to the affidavit, McCall informed Richartz that Appellant provided her with heroin and methamphetamine inside Appellant's bedroom earlier that day, the small piece of methamphetamine he gave her was taken from a larger piece the size of a golf ball, Appellant keeps his narcotics in his bedroom, she has observed him hide narcotics in vehicles on the property to avoid confiscation by police, she was told Appellant may have a firearm, she believed he cooked methamphetamine in the basement, she saw empty boxes of Sudafed inside the residence, and she knew of two other residents at the house who sold and consumed narcotics in her presence. *See* Affidavit of Probable Cause.

Additionally, Richartz stated he knows Sudafed is a precursor used to manufacture methamphetamine based on his training and experience, a check of Appellant's criminal history indicated he had three prior felony drug convictions (35 P.S. § 780-113(a)(30)), and within the past two months individuals arrested by Richartz for possession of narcotics or paraphernalia told him that Appellant sells methamphetamine from his residence. *See* Affidavit of Probable Cause.

Based on all of the above, the court concluded that the omissions referenced by Appellant were not material, they were not an attempt to create probable cause where none existed, they did not tend to mislead the magistrate as to the veracity of the facts included in the search warrant affidavit, and the affidavit would have provided probable cause even if it had contained a disclosure of the omitted information. Therefore, the court denied the suppression motion.[4]

---

[4] Appellant also alleged in his pre-trial motion that there were material omissions because the affidavit of probable cause did not state McCall was on parole for recklessly endangering another person or probation for possession of drug paraphernalia at the time of the warrant. *See* Omnibus Pre-Trial Motion. Furthermore, Appellant argued there was a material omission because the affidavit did not state McCall would not be charged with possession of a controlled substance even though she admitted to police she used drugs at Appellant's house that day. *Id.* Because Appellant did not raise these specific issues in his Statement they are deemed waived. *See Commonwealth v. Lord,* 719 A.2d 306, 309 (Pa.

8

In his second issue, Appellant argues the trial court erred in not suppressing the statement he gave to police because his *Miranda* waiver was not intelligent, knowing, and voluntary. *See* Statement. More specifically, Appellant claims he shook his head in the negative when police asked him whether he wished to answer questions, he responded "I don't think so," and police did not seek to clarify Appellant's verbal or body responses. *Id.*[5]

A police officer must administer *Miranda* warnings prior to custodial interrogation. *Commonwealth v. Baker*, 24 A.3d 1006, 1019 (Pa. Super. 2011). Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). In determining whether an individual is in custody for purposes of *Miranda*, the "ultimate inquiry . . . is whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Commonwealth v. Cooley*, 118 A.3d 370, 376 (Pa. 2015) (quoting *Stansbury v. California*, 511 U.S. 318, 322 (1994)). Presently, Appellant was questioned by police officers after being taken into custody.

---

1998). Assuming, *arguendo*, these issues are not waived, the affidavit clearly states that troopers took McCall into custody for a "warrant service" because she was entered into CLEAN/ NCIC as being wanted by the Lancaster County Sheriff's Office. *See* Affidavit of Probable Cause at ¶ 1. Therefore, the issuing authority was informed that McCall was taken into police custody pursuant to a warrant. Even if the charges or reason for the warrant were not specified, such information would not have undermined the other facts listed in the affidavit. As to drug use, Richartz testified he did not find any drugs or drug paraphernalia on McCall before obtaining the warrant and there was no evidence to corroborate her admission. (N.T.S.H. at 41). Thus, Richartz concluded he could not charge McCall with a crime prior to a search of the residence based on her statement alone. *Id.* at 18, 42. *See Commonwealth v. Taylor*, 831 A.2d 587, 590 (Pa. 2003) (a confession is not evidence in the absence of proof of the corpus delicti).

[5] In a pre-trial motion, Appellant also alleged he told police "No, not without a lawyer, no" in response to whether he would answer questions. *See* Amended Omnibus Pre-trial Motion. However, this issue is deemed waived because it was not raised in Appellant's Statement. *See Lord*, 719 A.2d at 309. Assuming, *arguendo*, the issue is not waived, Trooper Richartz testified that at no time did Appellant use the word lawyer or ask for a lawyer. (N.T.S.H. at 31, 34).

9

Once a suspect is subjected to custodial interrogation, any statements made are admissible if the Commonwealth can prove the suspect "knowingly and intelligently waived his privilege against self-incrimination and his right to counsel." *Commonwealth v. Scarborough*, 421 A.2d 147, 153 (Pa. 1980). A determination of whether a suspect has made a knowing and intelligent waiver is based on the totality of the circumstances. *Commonwealth v. Barry*, 454 A.2d 985, 988 (Pa. 1982). The Commonwealth must prove by a preponderance of the evidence that the statement was voluntary and the waiver was intelligent and knowing. *Commonwealth v. Edwards*, 555 A.2d 818, 826 (Pa. 1989).

All interrogation must cease if an individual states he wishes to exercise any of his rights after being advised of *Miranda* warnings. *Commonwealth v. Lukach*, 195 A.3d 176, 185 (Pa. 2018). However, "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Davis v. United States*, 512 U.S. 452, 459 (1994) (emphasis in original). "The inquiry into whether or not a suspect has invoked the right to counsel is an objective one." *Commonwealth v. Champney*, 161 A.3d 265, 273 (Pa. Super. 2017). Invocation of the right to remain silent in response to *Miranda* warnings must also be unambiguous and objectively clear. *See Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010); *Lukach*, 195 A.3d at 185-86.[6]

---

[6] In *Berghuis*, the United States Supreme Court noted that "there is no principled reason to adopt different standards for determining when an accused has invoked the *Miranda* right to remain silent and the *Miranda* right to counsel at issue in *Davis*." 560 U.S. at 381. In *Lukach*, the Pennsylvania Supreme Court found that the appellant had unambiguously invoked his right to remain silent when he said "Yeah. I don't know just, I'm done talking. I don't have nothing to talk about." 195 A.3d at 189-90. The Court reasoned it was logical to conclude that the statement "I'm done talking" meant appellee had finished "contemplating" and had definitively made up his mind. *Id.*

In the present case, Appellant states he shook his head in the negative when police asked him whether he wished to answer questions and responded, "I don't think so." Appellant further claims police did not seek to clarify his verbal or body responses. Appellant misstates the record. Richartz testified that when he asked Appellant if he wanted to make a statement, Appellant shook his head no and stated "no, I haven't thought about it." (N.T.S.H. at 26, 31, 32-34). Richartz then clarified by asking "do you want to answer some questions? If you don't want to, that's fine." *Id.* at 34. Richartz interpreted Appellant's shrug as an indication he was willing to talk. *Id.* at 26. Thereafter, Appellant initialed the *Miranda* waiver form indicating he wished to make a statement with his rights in mind. *Id.* at 26-27. Appellant then voluntarily answered questions and at no time did he stop to invoke his right to remain silent. *Id.* at 31.

As noted, invocation of the right to remain silent in response to *Miranda* warnings must be unambiguous and objectively clear. For example, the Pennsylvania Supreme Court found in *Lukach* that the appellant had unambiguously invoked his right to remain silent when he said he was done talking. The present case is clearly distinguishable. Appellant never said he did not want to talk to police. Rather, Appellant shook his head in the negative and said he had not thought about whether he wanted to make a statement. Appellant's statement that he hadn't thought about it is similar to the phrase "I don't know," and indicates Appellant was unsure of how to proceed. Viewing the interaction as a whole, a reasonable officer would not have concluded that Appellant unambiguously invoked his right to remain silent. Therefore, the court did not suppress Appellant's statement to police.[7]

---

[7] At trial, the court instructed the jury that the Commonwealth must prove the statement was voluntary and there was no violation of *Miranda* rights by a preponderance of the evidence before the jury could consider the statement as evidence against Appellant. (N.T. at 156-162).

11

## CONCLUSION

Based on the foregoing, the suppression court did not err when it denied Appellant's motions to suppress. The omissions from the affidavit referenced by Appellant were not material, they were not an attempt to create probable cause where none existed, and they did not tend to mislead the magistrate as to the veracity of the facts included in the search warrant affidavit. Furthermore, the affidavit would have provided probable cause even if it had contained a disclosure of the omitted information. As to his statement, the court properly found that Appellant did not invoke his right to remain silent. Therefore, this appeal should be denied.

BY THE COURT:

__August 28, 2019__
DATE

DONALD R. TOTARO, JUDGE

ATTEST:

Copies:     Travis S. Anderson, Esquire, Assistant District Attorney
Randall L. Miller, Esquire, Counsel for Appellant

12